UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wendell Wesley,<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | No. 1:25-cv-00125-KES-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITYAND AGAINST PLAINTIFF**<br><br>**(Doc. 13, 15)** |

### I.      Introduction

Plaintiff Wendell Wesley seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act.[1]

### II.      Factual and Procedural Background

Plaintiff applied for benefits on May 18, 2022, alleging disability as of February 24, 2022. AR 17.   The Commissioner denied the applications initially on August 29, 2022, and on reconsideration on January 31, 2023.  AR 59; 72.  The ALJ held a hearing on November 16, 2023. AR 33–49.  The ALJ issued an unfavorable decision on February 16, 2024.  AR 17–28.  The Appeals Council denied review on December 6, 2024 (AR 1–6) and this appeal followed.

### III.      The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Doc. 7, 9.

F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether

2

the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged disability onset date of February 24, 2022. AR 20.

At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease and coccidioidomycosis (valley fever). AR 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21–22.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations:

> he must have a sit/stand option with the ability to change position every 30 minutes, but could remain on task. He should avoid concentrated exposure to pulmonary irritants, such as dust, fumes, and gases; and is limited to frequent handling and fingering bilaterally.

AR 22–27.

At step four, the ALJ found that Plaintiff was able to perform his past relevant work as a dispatcher (sedentary). AR 27. Given this finding at step four, the ALJ's analysis did not proceed to step five. Accordingly, the ALJ concluded that Plaintiff was not disabled since his alleged disability onset date February 24, 2022. AR 27.

### V.    Issues Presented

Plaintiff asserts two claims of error: 1- The ALJ's RFC determination is not supported by

substantial evidence because she failed in her duty to complete the record and obtain an opinion of Plaintiff's RFC from a medical professional;  and 2- The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints.

### A.      RFC Generally; Failure to Develop the Record

#### 1.      Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1).  The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation.  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150.  A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020)

#### 2.      Analysis

To begin, the scheduling order directs that Plaintiff's motion for summary judgment contain: (a) a description of the Plaintiff's impairments and how these are disabling; (b) a summary of all relevant medical evidence and its significance; and (c) a summary of the relevant testimony at the administrative hearing.  ECF No. 5 at 3.

4

Despite this directive in the scheduling order, Plaintiff did not provide this discussion and instead simply stated that "The evidence relevant to the issues has been summarized in the arguments below." MSJ at 3. Plaintiff's discussion, as explained below, falls short.

First, Plaintiff begins his discussion with the following statement of law:

Plaintiff's RFC is the most he can still do despite his limitations and is determined by assessing all the relevant evidence. Berry v. Astrue, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. § 404.1545(a)(1). RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week." Social Security Ruling ("SSR") 96-8p. The RFC must identify the individual's functional limitations and assess their work-related abilities on a function-by-function basis. Id. In determining a claimant's RFC, the ALJ must base the findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by her impairments. 20 C.F.R. § 404.1545(a)(3).

"Still, an ALJ cannot make medical judgments, only legal judgments." Howell v. Kijakazi, 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (citing Duarte v. Saul, No. 2:19-cv-01019 AC, 2020 WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020) (citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)). "Barring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decisions." Howell, 2022 WL 2759090, at *7 (citing Duarte, 2020 WL 5257597, at *5 (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) ("With exceptions, ... an ALJ, as a layperson, is not qualified to interpret raw data in a medical record.")).

"In formulating an RFC, an ALJ cannot interpret raw medical data." Id. (citing Day, 522 F.2d at 1156 (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for the purpose of making his own assessment of the claimant's physical condition); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, ..., the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); Manso–Pizarro, 76 F.3d at 17; Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")). "[R]ecords [that] generally reflect only the findings, impressions, and medical diagnoses, are difficult for a lay person to interpret." Id.(citing Escudero v. Comm'r of Soc. Sec., No. 1:18-CV-01136-EPG, 2019 WL 4917634, *2 (E.D. Cal. Oct. 4, 2019) (finding "descriptions of medical documents post-dating the physician's opinions appear to be very medical in nature and not susceptible to a lay understanding.")). While the ALJ may discuss the medical records, when the records do not describe any functional limitations, the ALJ is not permitted to "independently evaluate[] Plaintiff's functional capabilities and improperly substitute[] his judgment for that of a medical expert." Id. (citing Stevenson v. Colvin, 2:15-cv-0643 CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015)

(citing Manso-Pizarro, 76 F.3d at 17) (finding the ALJ improperly interpreted raw medical data when the treatment records only included impressions and diagnoses without any opinion on the impairments effect on Plaintiff's ability to work); Nguyen, 172 F.3d at 35 (reversing and remanding for further proceedings where the ALJ made an RFC determination that was based on his own interpretation of raw medical data not supported by medical opinion evidence)).

Critically, this statement lacks an explanation of how the cited law applies to this particular case. For example, Plaintiff does not address the substance of the ALJ's findings but rather argues generally that an ALJ should obtain another consultative opinion to resolve ambiguity. Here, the relevant regulations explain that an ALJ may obtain an updated opinion to resolve ambiguity or inadequacy in the record, but not that an ALJ must do so in every case. *See* 20 C.F.R. § 404.1519. Nor do the regulations state that State Agency consultants'[2] findings of evidentiary ambiguity are binding on an ALJ or trigger a duty to obtain additional opinion evidence or other evidence.

The Ninth Circuit has explained that there "is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022). To that end, the ALJ in this case offered extensive discussion of the additional exhibits entered into the record after the initial and reconsideration determinations, records Plaintiff contends required additional expert analysis. AR 748-975. The ALJ explained that such records documented Plaintiff's coccidioidomycosis history and diagnosis and subsequent improvement with normal x-rays noting improved and stable lung findings. AR 24 (citing Ex. 10F: 9, 19-20; Ex. 12F: 17). In the end, the ALJ concluded that the evidence was "more consistent with greater limitations" in the RFC than the state agency medical consultants opined. Plaintiff does not dispute that the ALJ's RFC was indeed more restrictive. Id. (emphasis added). Nor does Plaintiff address the ALJ's findings or descriptions on any of these issues, rather he argues

---

[2] Known as "Prior Administrative Medical findings," or PAMFs, and which are rendered at the initial and reconsideration levels of review, prior to the ALJ hearing.

6

that the ALJ's only options here was either to adopt the existing opinions, even if less restrictive than the RFC, or obtain a new expert opinion. However, the regulations pertinent to this issue state that the RFC need not mirror any particular opinion, it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3).   Clearly, Plaintiff was not disadvantaged by the ALJ adopting a more restrictive RFC than the RFC arrived at by the state agency consultants.

Additionally, the records the ALJ reviewed included symptoms and testing confirming valley fever, abnormal lumbar spine imaging documenting degenerative disc disease, related physical exams, and evidence of recent right inguinal hernia with surgical treatment.   AR 26. Plaintiff does not explain how the ALJ's discussion of these symptoms and testing is in contravention to the caselaw he sets forth above regarding an ALJ going outside the record, consulting medical textbooks, or otherwise interpreting "raw medical data."

Simply put, the ALJ is not prohibited from independently reviewing medical evidence.  To the contrary, an ALJ "is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1006 (9th Cir. 2015).

Significantly, it appears that the only specific point Plaintiff makes is when he argues  that "the ALJ wholly failed to obtain an updated medical opinion to account for Plaintiff's seizure impairments." Yet the seizure impairment, which Plaintiff possibly referenced as a symptom of valley fever, is neither discussed before or subsequent to this assertion.   Plaintiff provides no description of such impairment, no citation to records concerning such impairment, and no explanation as to how his work is functionality impacted by such impairment.   See Bowen, 482 U.S. at 146 (noting claimant is in a better position to provide information about his own medical condition); SSR 17-4p (noting that the Commissioner has some role in developing the evidentiary

7

record, but claimants and their counsel have the primary responsibility).

In sum, Plaintiff has failed to support his claim that "the evidence relevant to the issues has been summarized in the arguments below." MSJ at 3; see Greenwood v. Fed. Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review"). Plaintiff has therefore not established that the ALJ erred by not developing the record with additional expert opinion(s) regarding his impairment generally, or his seizures specifically.

### B.    Subjective Complaints

#### 1.    Applicable Law

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, Although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding

positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).                    **2.**

### 2.    <u>Analysis</u>

It is important to note initially that it is not until the final page of his brief that Plaintiff provides much in the way of a concrete discussion about facts unique to his case.  Specifically, at the final page, Plaintiff takes issue with the ALJ's alleged "dismissal of Plaintiff's subjective complaints," which Plaintiff finds inappropriate "particularly as Plaintiff testified that he needed <u>breaks and leniency to go slow</u>. (Ar. 41)." (emphasis added).  Plaintiff argues that "<u>needing multiple breaks</u> would prevent Plaintiff from performing his past relevant work . . ." MSJ at 9.  It is this need for frequent breaks and leniency to go slow that appear to comprise the only <u>subjective complaints</u> at issue here.  To this end, Plaintiff cites pages 41 and 47 to 49 of the administrative hearing transcript.  Relevantly, testimony concerning Plaintiff's activity level appear at pages 40 to 41, which testimony is as follows:

> Q: So the broken tailbone, there's not a lot they can do for you for it so do you just -- how do you deal with it? How do you treat it?
> A: I'm just kind of up and down, you know.
> Q: Mm-hm.
> A: I squirm in my seat. I try not to sit for long. Once it gets excruciating I just get up and walk around.
> Q: Do you use one of those doughnut cushions? Does that help?
> A: I do have a seat pad for my vehicle.
> Q: Mm-hm.
> A: That's about it. It helps.
> Q: And then the sciatic nerve issues, I assume that means that you're having pain into that leg.
> A: Both hips.
> Q: Both hips, mm-hm.

A: Yeah. There seems to be -- I was told I have arthritis where that broken tailbone was so I guess that's what's causing it. I'm not 100 percent sure. I just know what they told me.

Q: So is the pain constant, does it come and go?

A: It's pretty constant. It's just that I know it's there. There's just nothing I can really do about it.

Q: Are you able to do chores that need to get done at home?

A: I'm able to do chores, yeah. It's just I might have to split it up. I may not be able to do it in one continuous motion. So I have to stop and then lie down, sit down, and then start back again.

Q: How long would you need to lie down or sit down before you could go back to whatever you were doing?

A: It varies. It seems to be worse in the colder weather. It just varies. Sometimes it has more to do with what I did the day before. If I had a very busy day, I'm not doing nothing the next day. I'm just down the whole day.

Q: Tell me what you do in a typical day. How do you spend your time from when you wake up until you go to bed?

A: When I wake up, I generally start with a cup of coffee, some news, breakfast. I don't really get to do a lot of cooking because taking that away from my wife is mentally tough for her. But then she has her care provider help her. So usually I just try to get some walking in but it's painful. I find myself out of boredom just going to Facebook and other activities I feel that I can make a difference and be of, you know, some value.

AR 40–41

The VE testified that a sit/stand option every 30 minutes would be compatible with Plaintiff's previous job as a dispatcher, but that 10 to 15% off task behavior would be work preclusive. AR 47–49.

Plaintiff argues that the ALJ wrongfully dismissed Plaintiff's testimony concerning his need for "multiple breaks" and "leniency to go slow." MSJ at 9. First, the exact extent to which these limitations or restrictions would restrict Plaintiff's ability to perform his past relevant work on a daily basis are not sufficiently discernable from this testimony. Next, although Plaintiff's Counsel did have a somewhat detailed discussion with the VE about tolerance for extra breaks 10 to 15% of a workday, Counsel did not adequately flesh out just how many breaks Plaintiff would need to take in an average 8 hour day, nor the duration they would last if taken.

In short, the testimony quoted above simply does not establish that Plaintiff would require work-preclusive breaks, and even though Plaintiff's characterization in his brief may capture the general gist of Plaintiff's testimony, the only concrete limitation articulated was the need to avoid

extended periods of sitting, and importantly to that end the RFC does provide for a sit to stand option which reasonably accounts for this.

In sum, the ALJ committed no error with respect to Plaintiff's subjective symptom complaints.

## VI.    Recommendations

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, the recommendation is as follows:

1.    That Plaintiff's motion for summary judgment (Doc. 13) be **DENIED.**

2.    That Defendant's cross-motion (Doc. 15) be **GRANTED.**

3.    That the decision of the Commissioner of Social Security be **AFFIRMED**.

4.    That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

## VII.    Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **January 28, 2026**                    **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE

11